```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                      EASTERN DISTRICT OF VIRGINIA

                            Alexandria Division


UNITED STATES OF AMERICA,      )
                               )
        v.                     )
                               )    1:11cr489 (JCC)
MICHAEL MAKALOU,               )
                               )
    Defendant.                 )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion for a New Trial. [Dkts. 99, 112.] For the following reasons, the Court will deny Defendant's motion.

## I. Background

Defendant Michael Makalou ("Defendant" or "Makalou") was a political officer with the United States Department of State. He was most recently stationed at the United States Embassy in Dakar, Senegal. On October 5, 2011, a federal grand jury returned an indictment charging Makalou with assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3). [Dkt. 23.] The charge stemmed from a physical alteration between Makalou and his wife, A.C.M., which occurred on August 13, 2011, at their residence in Dakar. The dangerous weapon Makalou allegedly used was a plastic dollhouse weighing 9 pounds and 11 ounces.

The Court held a bench trial on December 14 and 15, 2011. On February 8, 2012, the Court issued a Memorandum Opinion and Order finding Makalou guilty. [Dkts. 89, 90.] On February 22, 2012, Makalou filed a Motion for Judgment of Acquittal [Dkt. 97] and Motion for a New Trial [Dkt. 99]. The Government opposed both motions on March 5, 2012. [Dkts. 101, 102.] On March 20, 2012, the Court denied the Motion for Judgment of Acquittal. [Dkt. 103.] Makalou retained new counsel on March 28, 2012, who filed a supplemental submission in support of the Motion for a New Trial on June 13, 2012. [Dkt. 112.] The Government filed an opposition on June 18, 2012 [Dkt. 115], to which Makalou responded on June 21, 2012, [Dkt. 118].

Defendant's Motion for a New Trial is before the Court.

## II. Standard of Review

Federal Rule of Criminal Procedure 33 provides, in relevant part, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Whether to grant or deny a motion for new trial rests within the broad discretion of the district court. *See United States v. Smith,* 451 F.3d 209, 216–17 (4th Cir. 2006). The Fourth Circuit instructs that the "trial court's discretion should be exercised sparingly, and a new trial should be granted

only when the evidence weighs heavily against the verdict."
*United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985).

### III. Analysis

In his original motion, Makalou advances three arguments as to why the Court should grant him a new trial. First, he incorporates the arguments he made in his Motion for Judgment of Acquittal. In that motion, Makalou (1) argued that the Court applied the "wrong standard" in assessing witness credibility, (2) challenged the credibility of A.C.M. and her treating physician, Dr. Kelii Gurfield, and (3) accused the Government of misconduct. The Court denied the Motion for Judgment of Acquittal on March 20, 2012. The arguments advanced therein likewise fail to support the Motion for a New Trial. To begin, Makalou's argument that the Court applied a preponderance of the evidence standard in assessing witness credibility is frivolous. As clearly stated in the February 8 Memorandum Opinion, the Court found that the evidence at trial, including witness testimony, established all four elements of the charged offense beyond a reasonable doubt. (Mem. Op. [Dkt. 89] at 15-19.) As for his own assessment of witness credibility, Makalou largely mischaracterized the record[1] and ignored many of the

---

[1] According to Makalou, for example, Dr. Gurfield stated that the results of the CT scan did not corroborate a concussion. However, Dr. Gurfield in fact testified as follows:

> A concussion is a term for a type of brain injury that doesn't leave any residual findings on imaging studies. For instance, you don't see CT scan evidence for a concussion instantly or within

3

inconsistencies in his own testimony. He also ignored the fact that the Court's credibility assessment was based in part on the witnesses' demeanor, cadence, tenor, tone, and inflection of voice. (Mem. Op. at 11-12). As such, the Court's credibility determinations as stated in its February 8 Memorandum Opinion remain unchanged. And finally, Makalou's allegations of Government misconduct, including purported *Brady* violations, were entirely without merit.[2]

Second, Makalou argues, in conclusory fashion, that certain "exculpatory" witnesses were unavailable to him at trial. He first cites Special Agents Kerry Osterhout and William Alfano and the Deputy Chief of Mission in Senegal. All three of these individuals, however, are United States nationals subject to the Court's subpoena power. *See* 28 U.S.C. § 1783(a). Thus, contrary to Makalou's suggestion, these witnesses would have been available at trial had Makalou requested their appearance and demonstrated that their anticipated testimony was

---

> the first week. The symptoms of a concussion would be consistent with the symptoms [A.C.M.] was describing, such as prolonged headache.

(Trial Tr. 173:3-8.) Dr. Gurfield ultimately diagnosed A.C.M. with a concussion. (Trial Tr. 172:23-173:1; Gov't Ex. 9B.)

[2] For example, Makalou cites Special Agent Kerry Osterhout's interview report as exculpatory evidence that the Government failed to provide to him. However, the Government disclosed the report to defense counsel well before trial and made it available for review. The Government asserts, and Makalou does not dispute, that the report was not subject to production under Federal Rule of Criminal Procedure 16 or Jencks. And, assuming the report was exculpatory, the Government satisfied its *Brady* obligation by making it available for review. *See United States v. Pellulo*, 399 F.3d 197, 212-13 (3d Cir. 2005) (no *Brady* violation where Government made documents available for defendant's review, but did not provide copies at its own expense).

necessary in the interests of justice.  Makalou's suggestion that the Government decided to keep the witnesses from testifying for tactical reasons is wholly without support.

As for the foreign witnesses, Defendant fails to articulate how the Senagalese doctors who conducted CT scans and x-rays of A.C.M. would have offered testimony materially different from that provided by Dr. Gurfield, who testified at trial.  Makalou also points to a housekeeper who reported that she did not witness Makalou physically attack A.C.M.  However, Makalou does not argue that he made any effort to have the housekeeper appear voluntarily.  And the fact that the housekeeper, as a foreign national living outside the United States, is beyond the Court's subpoena power does not render Makalou's conviction unconstitutional under the Sixth Amendment. *See United States v. Zabaneh*, 837 F.2d 1249, 1259-60 (5th Cir. 1988).  For these reasons, the Court rejects Makalou's argument that he is entitled to a new trial because certain witnesses did not testify at trial.

Third, Makalou argues that he should be granted a new trial because the Court improperly disallowed testimony about the children's "vote" to stay with him following his and A.C.M.'s decision to separate.  The Court properly excluded this testimony, as it was not probative of any relevant issue.  As

5

such, the exclusion of this testimony does not provide a basis for a new trial.

On June 13, 2012, Makalou submitted two affidavits as a supplement to his original motion: one from Dr. Jean-Marc Voyadzis, a neurosurgeon, and another from Virginia Lynch, a forensic nurse. Dr. Voyadzis and Ms. Lynch opine on the nature of A.C.M.'s injuries and whether they are consistent with her description of the assault.

The parties dispute whether or not the supplemental submission is in fact a "supplement." Rule 33 requires a motion for a new trial predicated on grounds other than newly discovered evidence to be filed within fourteen days after the finding of guilty. Fed. R. Crim. P. 33(b)(2). As the Government points out, a defendant cannot circumvent the Rule 33 time limit by filing an untimely "supplement" that raises issues distinct from those in the original, timely-filed motion. *See United States v. Jones*, 45 F. App'x 271, 272 (4th Cir. 2002) (unpublished) (holding that the trial court "properly declined to consider [the defendant's] untimely supplement to his timely Rule 33 motion, as that supplement raised distinct issues from the issues raised in [the defendant's] original motion, and thus cannot relate back to the original motion for timeliness purposes"). The parties disagree as to whether the supplemental

submission raises issues distinct from Defendant's original motion and can be properly characterized a "supplement."

The Court deems this a non-issue, as the supplemental submission is, regardless of Makalou's characterization, a motion for a new trial based on new evidence. It is thus timely and need not relate back to the original motion for timeliness purposes. *See* Fed. R. Crim. P. 33(b)(1). Makalou's position that the affidavits "supplement" the original motion is apparently driven by the assumption that a less stringent standard applies if they are deemed to have been filed within the fourteen day time period prescribed by Rule 33(b)(2).[3] However, other circuits have held, and this Court agrees, that the same standard governs a new evidence-based Rule 33 motion irrespective of when it is filed. *See United States v. Wall*, 389 F.3d 457, 468 (5th Cir. 2004); *United States v. Quintanilla*, 193 F.3d 1139, 1146-47 (10th Cir. 1999); *United States v. Johnson*, 26 F.3d 669, 682 n.9 (7th Cir. 1994).[4] As the Tenth Circuit explained in *Quintanilla*, if motions based on new

---

[3] Indeed, although Makalou acknowledges that the supplemental submission "adds critical expert opinion evidence," he argues that because the evidence addresses witness credibility issues raised in his original motion, the Court need not enter into a "newly discovered evidence" analysis. (Reply [Dkt. 118] at 2.)

[4] In reaching its holding, the Fifth Circuit in *Wall* noted that, contrary to the district court's conclusion, "the interest of justice" is not an independent ground for granting a Rule 33 motion, but rather is the standard for granting any Rule 33 motion, whether based on new evidence or other grounds. 389 F.3d at 468 (citing *United States v. Villarreal*, 324 F.3d 319, 325 (5th Cir. 2003)). In *United States v. Robinson*, 627 F.3d 941, 948 (4th Cir. 2010), the Fourth Circuit likewise noted the interest of justice standard before analyzing a new evidence-based Rule 33 motion and applying the five *Chavis* factors, discussed *infra*.

7

evidence were treated differently depending on the filing date, "defendants would have no diligence obligation and could keep an evidentiary trump card in the event of conviction." 193 F.3d at 1147. Such a rule would also penalize convicted defendants who discover exculpatory evidence more than fourteen days (but within three years) of the finding of guilt. *See id*. The Court agrees with this assessment of Rule 33.

To receive a new trial based on new evidence a defendant must demonstrate: (1) the evidence is newly discovered; (2) he has been diligent in uncovering it; (3) it is not merely cumulative or impeaching; (4) it is material to the issues involved; and (5) it would probably produce an acquittal. *United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989). The Fourth Circuit has "never allowed a new trial unless all five elements were established." *United States v. Robinson*, 627 F.3d 941, 948 (4th Cir. 2010) (quoting *United States v. Fulcher*, 250 F.3d 244, 249 (4th Cir. 2001)).

Makalou cannot satisfy his required showing. First, the affidavits of Dr. Voyadzis and Ms. Lynch are not "newly discovered." A.C.M.'s medical records and photographs of her injuries were produced to Makalou in advance of trial. Makalou's counsel also reviewed interview reports, including reports containing A.C.M.'s description of the incident and the nature of her injuries. Dr. Voyadzis and Ms. Lynch rely on this

information in forming their opinions.  (*See* Voyadzis Aff. [Dkt. 112 Ex. A] ¶¶ 8-14; Lynch Aff. [Dkt. 112 Ex. B] ¶¶ 21-26.)  Because the information on which the opinions are based was available to Makalou before trial, it cannot be said that the evidence is "newly discovered."  For the same reason, Makalou could have easily called Dr. Voyadzis and Ms. Lynch as witnesses at trial rather than submitting their affidavits months after being convicted.  He therefore cannot demonstrate that he exercised diligence in uncovering the evidence he now seeks to introduce.  *See United States v. Swinson*, 243 F. App'x 760, 763 (4th Cir. 2007) (unpublished) (agreeing with the district court that evidence defendant sought to introduce through Rule 33 motion should have been available at trial, and he therefore did not act with diligence in acquiring it).

In addition, as Makalou himself acknowledges, the affidavits "bear upon the credibility of the complainant's version of events."  (Supplemental Mem. [Dkt. 112] at 1.)  As such, the affidavits are merely impeaching and, for that reason, do not warrant a new trial.  *See United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993) ("This circuit has emphasized that new evidence going only to the credibility of witnesses does not generally warrant the granting of a new trial.")  In a related vein, motions for new trial "based solely upon affidavits are disfavored because the affiants' statements are

9

obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Herrera v. Collins*, 506 U.S. 390, 417 (1993) (citing Orfield, New Trial in Federal Criminal Cases, 2 Vill. L. Rev. 293, 333 (1957)).

      Lastly, if Dr. Voyadzis and Ms. Lynch were to testify at a new trial consistent with what is in their affidavits, it is improbable that their testimony would produce an acquittal. In finding A.C.M.'s version of events credible, the Court noted not only A.C.M.'s injuries, but also her demeanor on the witness stand and the consistency of her testimony with the narratives she relayed to other witnesses -- namely Dr. Gurfield and the Makalous' neighbor, Sarah Devlin. The affidavits provided by Dr. Voyadzis and Ms. Lynch do not bear on the Court's latter findings. Nor do they account for many of the inconsistencies in Makalou's testimony. In addition, based on its observation at trial, the Court found Dr. Gurfield credible. His testimony is also entitled to substantial weight given that -- unlike Dr. Voyadzis and Ms. Lynch -- he observed the victim in person shortly after the incident in question. In the end, the opinions of Dr. Voyadzis and Ms. Lynch regarding A.C.M.'s injuries do not cast reasonable doubt on any of the elements of Makalou's offense. As the Court noted in its February 8 Memorandum Opinion, the dollhouse in this case was a dangerous weapon not because it caused great bodily harm, but because it

had the capacity to do so in the way it was used. (Mem. Op. at 18.) As such, the opinions of Dr. Voyadzis and Ms. Lynch as to whether A.C.M. suffered a concussion or lost consciousness would not sway the outcome in this case. In sum, Makalou fails to demonstrate that the "new" evidence he now presents warrants a new trial.

### IV. Conclusion

For these reasons, the Court will deny Defendant's Motion for a New Trial.

An appropriate Order will issue.


|  | /s/ |
|---|---|
| July 5, 2012 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |